# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THOMAS DAVIS,**

    **Plaintiff,**

**v.**                                                     **CIVIL ACTION NO. 1:07cv5**
                                                                              (Judge Keeley)

**WARDEN JOYCE FRANCIS,**

    **Defendant,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The pro se plaintiff initiated this case on January 11, 2007, by filing a civil rights complaint against the above-named defendant pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On January 17, 2007, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on March 12, 2007.

On January 17, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day.

On March 19, 2007, the defendant filed a Motion for Enlargement of Time to file his answer. That motion was granted on May 2, 2007, and the time for the defendant to answer was extended to April 30, 2007. On April 30, 2007, the defendant filed a second Motion for Enlargement of Time to

file his answer. That motion was also granted, and the time for defendant to answer was extended to May 30, 2007. On June 6, 2007, the defendant filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. A Roseboro Notice was issued on June 7, 2007. On June 18, 2007, the plaintiff filed a Response in opposition to the defendant's Motion to Dismiss or Motion for Summary Judgment.

Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss or Motion for Summary Judgment.[1]

## II. The Complaint

The plaintiff is a federal inmate, who is incarcerated at the Federal Correctional Institution located in Gilmer, West Virginia ("FCI Gilmer"). The plaintiff filed his civil rights complaint on January 11, 2007, alleging deliberate indifference to his medical needs. More specifically, the plaintiff alleges that his Eighth Amendment rights have been violated as the result of inadequate medical care for his diabetes and a lack of a diabetic diet at FCI Gilmer. The plaintiff alleges that his medical conditions, including diabetes and hypertension, require a "low sodium, low fat, limited sugar and carbohydrate 2400 calorie diet which I am not provided here at F.C.I. gilmer [sic]. The plaintiff names

---

[1] On May 3, 2007, and June 12, 2007, the plaintiff filed Motions for Summary Judgment based on the fact that the defendant had not filed an answer within the mandated period of time. The undersigned assumes that the plaintiff intended these Motions to be for default. However, it is clear that the defendant filed timely motions for extensions of time, and that his answer was filed within the time period prescribed. In addition, the plaintiff filed a Motion for Summary Judgment on August 14, 2007, apparently because the defendant did not respond to his reply. Again it appears that the plaintiff is seeking a default judgment. However, Rule 7(a) of the Federal Rules of Civil Procedure provides that "[t]here shall be a complaint and an answer...[n]o other pleading shall be allowed, except that the court may order a reply to answer..." Thus, the defendant is not required to file a response to the plaintiff's reply, and in fact, such a response is expressly prohibited by the Federal Rules. Accordingly, the plaintiff is not entitled to a default judgment, and no further discussion of any of these Motions is necessary.

the Warden of FCI Gilmer, Joyce Francis, as the sole defendant in this action. As relief, the plaintiff requests compensatory damages in the amount of $2,000,000, punitive damages in the amount of $2,000,000, and the implementation of a diabetic diet at FCI Gilmer or a transfer to another facility.

### III. The Answer

The defendant has filed an answer that includes a Motion to Dismiss, or in the alternative, Motion for Summary judgment. While acknowledging that the plaintiff has exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), the defendant alleges that he entitled to judgment because:

1. *Respondeat Superior* is inapplicable in a Bivens action;

2. Official capacity claims are not proper under Bivens;

3. The plaintiff cannot establish supervisory liability; and

4. The complaint fails to state a claim upon which relief can be granted.

### IV. Standard of Review

#### A. Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

#### B. Summary Judgment

3

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.

1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita at 587 (citation omitted).

## V.  ANALYSIS

### A.  Warden Joyce Francis

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations."  Trulock v. Freeh, 275 F.2d 391, 402 (4th Cir. 2001)(internal citation omitted).  Thus, in order to establish liability in a Bivens case, a plaint must specify the acts taken by the defendant which violate his constitutional rights.  See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663 (3rd Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.  See Zeitler v. Wainwright, 802 F.2d 391, 401 (11th Cir. 1986).  *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case.  Rizzo v. Good, 423 U.S. 362 (1976).

Here, the plaintiff does not allege any personal involvement on the part of Warden Francis.  Instead, it appears that the plaintiff has named him as defendant only in his official capacity as the Warden of FCI Gilmer.  However, a suit against government agents acting in their official capacities is considered a suit against the United States itself.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits... generally present only another way of pleading an action against an entity of which an officer is an agent.'").

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1)

the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding the Court recognized that [s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id.

In this case, the plaintiff has not provided any evidence that Warden Francis tacitly authorized or was deliberately indifferent to an alleged violation of his constitutional rights. Moreover, to the extent that the plaintiff may be asserting that the Warden was deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit because that is not the type of personal involvement required to state a Bivens claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003). Therefore, this defendant should be dismissed from the case, and the case closed. Furthermore, to the extent that the Court should be inclined to liberally interpret the plaintiff's designation of the defendant in this action, for the reasons stated below, he has failed to allege any claim that amounts to a violation of his 8th Amendment right to adequate medical care.

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a

6

mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[2]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a cruel and unusual punishment claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. [D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837. A prison official is not liable if he knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent. Id. at 844.

While, the plaintiff's diabetic condition is sufficiently serious to meet the objective component, the Fourth Circuit requires not only that the condition be serious, but also that a prisoner provide evidence that his condition was not timely or properly treated. Harden v. Green, 27 Fed. Appx. 173, 178 (4th Cir. 2001)("The objective element also requires [the prisoner] to prove that his serious medical need was not timely or properly treated."); Clinkscales v. Pamilco Correctional facility Medical Dept., No. 00-6798, 2000 WL 1726592 *1 (4th Cir. Nov. 21, 2000).

Although the plaintiff claims that he does not receive his insulin in a timely fashion, and that no diabetic diet is available at FCI Gilmer, the evidence submitted by the defendant clearly establishes the contrary. It also establishes that the plaintiff's medical condition has been timely and properly treated.

The affidavit of Roger Edwards, a physician at FCI Gilmer indicates that the plaintiff arrived at FCI Gilmer on August 4, 2005 and was screened by medical staff upon intake. He was then assigned to the Chronic Care Clinic for monitoring and management of his diabetes and hypertension. Dr. Edwards explains in his affidavit that the Chronic Care Clinic is a method used by the Bureau of Prisons to manage the health care of inmates with chronic health conditions on a regular basis. Inmates enrolled in the chronic care clinic program are seen by staff physicians on at least a three month basis for monitoring of their health conditions. (Doc. 23-4)

With respect to the plaintiff's claims that there is no diabetic diet at FCI Gilmer, Dr. Edwards notes that nothing in his medical record indicates that the plaintiff requires a medical diet. To comply with his needs as a diabetic, the plaintiff has been advised on numerous occasions to select the heart healthy alternative choices at mainline to maintain blood sugar levels. Furthermore, staff at FCI Gilmer have followed the plaintiff's condition closely and created schedules for his insulin intake which depend upon his sugar levels. However, the plaintiff is noncompliant with both his diet and medication. The medical records make reference to the plaintiff making poor dietary choices both at mainline and in the commissary by eating and purchasing sugary and fat-laden items. There are also two references to him manipulating his sugar levels and shooting his insulin on the floor rather than taking it.(Doc. 23-4).

Accordingly, nothing in the record shows that the plaintiff's medical condition was not timely or properly treated. Therefore, the plaintiff has failed to meet the objective component as required by the Fourth Circuit. Nor, can he meet the subjective component. To establish deliberate indifference, the plaintiff must show that prison officials knew of and disregarded a substantial risk to his health. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Medical staff may be found to be deliberately

9

indifferent by intentionally denying or delaying access to medical care or by intentionally interfering with a prescribed course of treatment. Estelle, supra at 104-05.

The medical records submitted by the defendant demonstrate that the plaintiff was provided continuous medical care, and that there has never been an intentional interference with a prescribed course of treatment. In his complaint, the plaintiff himself, provides evidence that he has been afforded appropriate and timely medical care. On August 31, 2006, he was escorted from the chow hall by Lt. Clark and taken to the infirmary where he was given glucose to bring his blood sugar up. In addition, on March 13, 2003, the nurse tried to get him to eat, but because he ate very little, she gave him an I.V. with "sugar water" to bring his glucose level up. Even when he the prison was on lock down, the nurse hand delivered pills or insulin to the inmates who required them. Furthermore, the nurse even had the plaintiff check his glucose level while she was present. (Doc. 1-1, p. 5).

Finally, it is pertinent to note that the substance of the plaintiff's complaint appears to be his disfavor with the quality of the food served at FCI Gilmer. In his complaint, he notes that on September 29, 2006, breakfast "was a cold muffin with an egg or two pieces of white bread with jelly and oatmeal. I ate the two pieces of white toast. I never liked oatmeal so I ate very little and returned to my cell." (Doc. 1-1, p. 5). He alleges that the following morning, "[b]reakfast was a cinimun [sic] roll, powdered milk' so I didn't eat. The cereal was awful." (Doc. 1-1, p. 8). Finally, the medical records that on April 21, 2006, the plaintiff reported to sick call complaining of high blood sugar and requesting glucose. He admitted that he had not eaten breakfast and had not eaten his snack provided to him the night before because "he does not like cheese sandwich." (Doc. 37, p. 4).

"The Eighth Amendment assures prisoners a medically and nutritionally sound diet; it does not guarantee a pleasant culinary experience." Frazier v. Dep't of Corrections, 125 F.3d 861, *1 (10th Cir.

1997)(unpublished)(*citing* Jackson v. Hanlon, 923 F.2d 856 (7th Cir. 1991)(unpublished)). The Bureau of Prisons Program Statement 4700.05, Food Service Manual, provides that "[m]edical diets will be provided by mainline sel selection or by pre-plated/controlled plating and will be available at all institutions as ordered by medical personnel as noted in the Patient Care PS." Program Statement 4700.05, Ch. 5, p.1.[3] This Program Statement also controls the contents of the snacks provided to diabetic inmates, which typically consists of one cup of skim milk and 1 cup of non-sugar coated dry cereal, or, among other alternatives, a one ounce slice of cheese and one slice of white bread or six saltine crackers. The plaintiff's dislike for the food available in prison does not rise to the level of a constitutional violation.

## VI. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's complaint (Dckt 1) be **DISMISSED** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim, the defendants's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 23) be **GRANTED**, the plaintiff's Motions for "Summary Judgment" (Docs. 19, 26, and 30) be **DENIED**.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the

---

[3]See, www.bop.gov.

Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 14, 2007.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE